# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| WILLIAM SCHRIMPF, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action Number: |
| vs. ) | |
| ) | |
| AMERICAN MINING INSURANCE ) | |
| GROUP, LLC, and W.R. BERKLEY ) | |
| CORPORATION, ) | **PLAINTIFF DEMANDS A** |
| ) | **TRIAL BY STRUCK JURY** |
| Defendants. ) | |

## COMPLAINT

### JURISDICTION AND VENUE

1.  This action is brought to redress employment discrimination suffered by the Plaintiff based on his age in violation of the Age Discrimination in Employment Act ("ADEA").

2.  The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343, 28 U.S.C. §§2201 and 2202.

3.  Venue is proper under 28 U.S.C. § 1391, because the Plaintiff worked for

the Defendants in Jefferson County, Alabama.

## PARTIES

4. The Plaintiff, William Schrimpf, was more than 19 years old at the time of the events in question, and lives in Jefferson County, Alabama.

5. Defendant American Mining Insurance Group, LLC ("AMIG") is a Delaware limited liability corporation organized in the State of Delaware.

6. AMIG does business at 3490 Independence Drive in Homewood, Alabama.

7. AMIG provides workers compensation insurance products and services for employers throughout the Eastern United States.

8. AMIG is an employer that had 20 or more employees in 2018.

9. AMIG is an employer that had 20 or more employees in 2019.

10. AMIG is an employer that had 20 or more employees in 2020.

11. AMIG is an employer for purposes of the ADEA.

12. AMIG began doing business under the name Berkley Industrial Comp in April 2019.

13. AMIG has been a W.R. Berkley Corporation member since 2007.

14. W.R. Berkley Corporation is an insurance holding company that is among the largest commercial lines writers in the United States and operates

worldwide.

15. Each company owned by W.R. Berkley Corporation is referred to as an operating unit.

16. AMIG was and is an operating unit of W.R. Berkley Corporation.

17. AMIG uses a W.R. Berkely handbook.

18. AMIG provided Schrimpf with W.R. Berkley benefits.

19. Both AMIG and W.R. Berkley exercised control over Mr. Schrimpf's employment.

20. W.R. Berkley Corporation is an employer for purposes of the ADEA

21. AMIG was Mr. Schrimpf's employer for purposes of the ADEA.

22. W.R. Berkley was Mr. Schrimpf's employer for purposes of the ADEA.

## ADMINISTRATIVE REMEDIES

23. Defendants terminated Mr. Schrimpf's employment on June 13, 2018.

24. On November 5 2018, Mr. Schrimpf filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") alleging that he was terminated because of his age. A copy of the Charge of Discrimination is attached as Exhibit A.

25. Mr. Schrimpf alleged in his EEOC Charge that Defendants engaged in a

pattern and practice of discrimination against older workers.

26. Mr. Schrimpf filed his EEOC Charge within 180 days of the termination of his employment.

27. On November 1, 2019, the EEOC issued Dismissals and Notices of Rights on Mr. Schrimpf's EEOC Charges against Defendants. Copies of the Dismissals and Notices of Rights are attached as Exhibit B.

28. Mr. Schrimpf received the Dismissals and Notices of Rights after November 1, 2019.

29. Mr. Schrimpf filed this action within 90 days for November 1, 2019.

30. Mr. Schrimpf satisfied the administrative prerequisites to file this action.

31. Mr. Schrimpf exhausted his administrative remedies.

## COUNT I
## ADEA
### (Termination of Employment)

32. Mr. Schrimpf was born in 1960.

33. Mr. Schrimpf obtained his juris doctorate degree from Duquesne University School of Law in 1987.

34. Mr. Schrimpf began his employment with Defendants in 2009 as Senior Vice President, General Counsel & Chief Claims Officer.

35. During his employment, Mr. Schrimpf's job title changed to Senior Vice President (Chief Resolution Officer).

36. Mr. Schrimpf met the qualifications to hold the position of Senior Vice President (Chief Resolution Officer).

37. As Senior Vice President (Chief Resolution Officer), Mr. Schrimpf served on the executive management team for AMIG, ran the claims department for AMIG, and was the litigation manager for AMIG.

38. Defendants paid Mr. Schrimpf an annual salary of $192,000 plus bonuses, stock options, and profit sharing.

39. Defendants provided Mr. Schrimpf with numerous employee benefits including medical/dental/vision insurance coverage, restricted stock units, and life insurance.

40. During Mr. Schrimpf's nine-year tenure with the Defendants, he had stellar performance reviews, including strong and favorable ratings for his interaction with others.

41. Defendants followed a progressive discipline policy.

42. Defendants' progressive disciple policy applied to high-ranking officials, including Vice-Presidents and members of the executive management team.

43. Defendants did not issue any discipline to Mr. Schrimpf during his employment.

44. Based on Mr. Schrimpf's performance, he received restricted stock units which are only given to outstanding performers.

45. Leading up to his termination, Mr. Schrimpf observed efforts by the Defendants to remove older workers, including officers and upper-level managers, of an age comparable to or greater than his.

46. Because of the treatment Mr. Schrimpf observed the Defendants directing at older workers, he began to have concerns that as he aged, Defendants would look for a reason to manage him out of the workforce as well.

47. Mr. Schrimpf witnessed Chandler Cox, AMIG's President and Chief Executive Officer complain in open meetings about the financial drag that older executives' put on the Defendants.

48. After complaining about the drag that older employees were putting on the Defendants, Mr. Cox would comment that they needed to get the head count down.

49. Mr. Schrimpf heard other members of the executive management team lament the financial burden associated with the employment of older

workers and their negative effect on the Defendants' expense ratio.

50. After the termination and/or managing out of older employees, Mr. Cox and/or other members of the executive management team would comment that the expense ratio "just went down."

51. Older employees Mr. Schrimpf observed and/or believed Defendants to have managed out of their employment include, but are not limited to:

   a. Jill Boller

   b. Bryan Brown (Senior Vice-President, Marketing Director)

   c. Kevin Foushee

   d. Ruth Howald (Senior Vice-President, Actuary)

   e. Myra Kelleher

   f. Peter Lambert (Vice-President of Claims Berkely Speciality Underwriters Managers)

   g. Kevin Mauzy (Senior Vice- President, Marketing)

   h. Patricia Onion (President of Berkley Medical Management Services)

   i. Kaye Phillips

   j. Mary Smith

   k. Linda Tucker

l.  Sylvia Watkins

m.  Lance Wheeler

52. Defendants terminated Mr. Schrimpf's employment on June 13, 2018.

53. Defendants terminated Mr. Schrimpf's employment one month before his 58th birthday.

54. Chandler Cox, AMIG's President and Chief Executive Officer, told Mr. Schrimpf that Defendants were terminating his employment.

55. Mr. Cox told Mr. Schrimpf that the reason for his termination was the language Mr. Schrimpf used in an email sent May 7, 2018 to Jack LaMantia.

56. The language Mr. Schrimpf used in the email he sent May 7, 2018 to Jack LaMantia was not a legitimate or true reason to fire him.

57. In the email in question, Mr. Schrimpf held Mr. LaMantia accountable for repeated mistakes costing the Defendants hundreds of thousands of dollars.

58. Mr. Schrimpf's communication style expressed in the email was no different than Mr. Cox's communication style and was not inconsistent with any policy or practice of the Defendants.

59. The email was a convenient excuse for Defendants to terminate Mr. Schrimpf and conceal their discriminatory motive.

60. Upon terminating his employment, Defendants presented Mr. Schrimpf with a severance agreement on behalf of "Berkley Insurance Company by its operating unit American Mining, its agents, current or past officers, directors, members, employees, and successors, its parents, affiliates, their agents, officers, directors members, employees, and successors, and each of them. . . referred to as the "Company."

61. Mr. Schrimpf did not accept the severance agreement.

62. On June 15, 2018, Mr. Cox sent a letter to Mr. Schrimpf "to remind [him] of [his] obligation to W.R. Berkley Corporation and its subsidiaries, including American Mining Insurance Group (the 'Company') that continue after [his] termination of employment."

63. Defendants reassigned Mr. Schrimpf's job duties and responsibilities to Greg Hamlin.

64. Upon information and belief, Mr. Hamlin was in his 30s when he assumed Mr. Schrimpf's job duties and responsibilities.

65. Mr. Schrimpf was over the age of 50 at the time of his termination.

66. Mr. Schrimpf was qualified for the position he held with the Defendants.

67. Defendants terminated Mr. Schrimpf's employment.

68. Defendants replaced Mr. Schrimpf with a substantially younger employee.

69. Defendants managed-out and terminated other employees from its workforce.

70. Defendants terminated Mr. Schrimpf because of his age.

71. Defendants discriminated against Mr. Schrimpf because of his age.

72. At the time Defendants terminated Mr. Schrimpf, Defendants were aware that the ADEA prohibited terminating an employee because of his age.

73. Defendants have a pattern and practice of discriminating against older employees with respect to termination.

74. Defendants violations of the ADEA were willful, without good faith and/or without a reasonable belief that their actions were lawful.

WHEREFORE, PREMISES CONSIDERED, Mr. Schrimpf requests then entry of a judgment against Defendants for violating the ADEA pursuant to an Order which:

    (a)    awards backpay;

    (b)    awards liquidated damages;

    (c)    awards injunctive relief, including backpay, reinstatement and/or reasonable front pay;

    (d)    awards that relief which is fair, reasonable and just; and

    (e)    taxes costs against said defendant, including a reasonable attorney's fee.

PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY.

Respectfully submitted,

*/s/ Heather N. Leonard*

Heather N. Leonard
Bar ID - ASB-115-O61H
Attorney for Plaintiff
HEATHER LEONARD, P.C.
2105 Devereux Circle, Suite 111
Birmingham, AL 35243
Telephone: (205) 977-5421
Facsimile: (205) 278-1400
Heather@HeatherLeonardPC.com

**PLEASE SERVE DEFENDANTS VIA CERTIFIED MAIL:**

American Mining Insurance Group, LLC
c/o Chandler F. Cox, Jr.
President and CEO
American Mining Insurance Group
3490 Independence Drive
Birmingham, AL 35209

W.R. Berkley Corporation
c/o The Corporation Trust Company

Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801